Gregory G. Pinski, Bar No. 5254
CONNER, MARR & PINSKI, PLLP
520 Third Avenue North
P. O. Box 3028
Great Falls, MT 59403-3028
Telephone:  (406) 727-3550
Facsimile:  (406) 727-1640
greg@mttrials.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| JUSTIN STEVENS,<br><br>    Plaintiff,<br><br>vs.<br><br>NORTHWESTERN CORPORATION (d/b/a NORTHWESTERN ENERGY) and DOES 1-10,<br><br>    Defendants. | Cause No. _____<br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

COMES NOW Justin Stevens and for his Complaint against Defendant alleges:

**PARTIES**

1. Plaintiff Justin Stevens is a citizen of South Dakota, residing in Lawrence County.  At all relevant times to the matters herein, Plaintiff was a citizen of Montana, residing in Cascade County.

2. Defendant Northwestern Corporation is a Delaware corporation. Defendant is registered with the Montana Secretary of State as a foreign corporation to conduct business in Montana under the assumed business name, "Northwestern Energy." Defendant's principal place of business in Montana is at 11 E. Park Street, Butte, MT 59701.

3. The true names or capacities, whether individual, corporate, associated, affiliated, or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Upon information and belief, each of Defendants sued herein as a fictitious name is legally responsible in some manner for the events and happenings referred to herein, and Plaintiff will seek leave of Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States.

5. This Court has personal jurisdiction over Defendant because it transacts business in Montana, owns property in Montana, employed Plaintiff and others in Montana, and this cause of action arises from its employment actions in Montana.

6. Venue is proper in this District because unlawful employment practices were committed in this District.

7. Venue is proper in this Division because unlawful employment practices occurred in this Division and Defendant's principal place of business in this District is in this Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On August 27, 2021, Plaintiff dual-filed a charge of sex and disability employment discrimination with the Montana Human Rights Bureau and U.S. Equal Employment Opportunity Commission. On August 26, 2022, the EEOC issued a Dismissal and Notice of Rights (Issued on Request). This Complaint is filed within 90 days of receipt of that notice. Plaintiff exhausted his administrative requirements and remedies for this Court's jurisdiction.

## FACTUAL BACKGROUND

9. Plaintiff is a servicemember in the Montana Air National Guard.

10. Plaintiff was employed by Defendant as an Operator Assistant from January 21, 2019, to March 1, 2021. Plaintiff was an employee of Defendant within the meaning of Title VII, the Americans with Disabilities Act (ADA), and the Uniformed Services Employment and Reemployment Act (USERRA).

11. Defendant is an employer within the meaning of Title VII and the ADA, in an industry affecting commerce, and has 15 or more employees for each working

day in each of 20 or more calendar weeks in the current or preceding calendar year. Defendant is also an employer within the meaning of the USERRA.

12.  Throughout his employment, Plaintiff was subjected to fits of rage, aggression, belittlement, profanity, and threats from his training supervisor. When Plaintiff asked his training supervisor to stop belittling him, he was denied further training for his highly technical job and was demoted to performing menial housekeeping chores. The training supervisor mostly referred to Plaintiff not by his name but as "cunt" and "cunt fucker."

13.  On one occasion, Plaintiff's training supervisor became so irate over Plaintiff's work on a $CO_2$ system, the training supervisor grabbed a handful of wires and cut them all at once, tripping the entire hydroelectric plant offline. This misconduct was deflected to Plaintiff. The training supervisor, having engaged in intentional misconduct to undermine Plaintiff, called him a "dumb mother fucker" and repeatedly yelled, "fuck" while calling Plaintiff a "cunt." The training supervisor told Plaintiff to "go ahead and report me to HR, because nothing will happen."

14.  On another occasion, while training Plaintiff, the training supervisor became so irate with Plaintiff he jumped up and down on the RBO9 trash conveyor, causing it to break, again reflecting poorly on Plaintiff. Plaintiff often found himself in a vehicle with his training supervisor who became so angry with Plaintiff he drove

erratically, spinning out of control at ridiculously high rates of speed to intimidate and scare Plaintiff. One time, the training supervisor became so frustrated loading equipment into a truck he did not tie down the equipment. As he sped away, a large part flew off and nearly struck another truck and nearby employees. Plaintiff told the training supervisor to report the incident and the supervisor laughed. Plaintiff reported the matter to local management and a corporate safety manager. In response, the local management berated and scolded Plaintiff for complaining.

15. One time, the training supervisor became so upset with Plaintiff he ripped a space heater off a wall in the Black Eagle dam shack and threw it in the Missouri River while screaming profanity. Another time, Plaintiff's training supervisor threw a sump pump through a glass window at the Rainbow Dam powerhouse.

16. Plaintiff complained to management about employees taking company trucks to bars while on duty and returning to work under the influence of alcohol. Plaintiff noted that an on-call supervisor was on call and intoxicated, so another employee had to drive a manager to respond to an alarm. Plaintiff's complaints to management were disregarded.

17. At least one manager bragged in the workplace about having sex with his wife on top of a unit at Black Eagle Dam.

18. When he complained about the workplace, one manager told Plaintiff that the company does not have time for his "shit." Plaintiff's ongoing complaints were met with managers and supervisors telling him to "mind your own business," "it is not your job to complain," "it's always been like this," "it's just a personality conflict," and "it's like this for everyone."

When he complained, Plaintiff was belittled, berated, cussed out, harassed, and lied to. After he complained, Plaintiff was refused training, assigned medial tasks, isolated in remote locations, told to perform duties he was untrained to perform, pertinent information was withheld from him, and he was set up to fail. Since his complaints to supervisors were ignored and led to retaliatory adverse employment actions, Plaintiff complained to human resources representatives at Defendant's Butte headquarters. Plaintiff did not present Defendant's human resources representatives with vague, unsubstantiated complaints. Rather, he provided dozens of pages of contemporaneous notes, photographs, and documentation. Even the human resources representatives were dismissive, once telling Plaintiff in response to concerns about the training supervisor, "Oh there's no helping that guy." After he raised the issues to human resources, he was again subject to retaliation and further adverse employment actions. He was ostracized and segregated to another dam to work alone, posing a safety risk since he was not trained on duties for that dam. Worse yet, the managers assigned him these isolated

duties without proper training, knowing of his disability, namely military PTSD and depression, and the risk of isolating a veteran with these mental health issues.

19. Having received an impeccable evaluation a few months earlier, after he complained, supervisors questioned and scrutinized Plaintiff's job performance. Plaintiff was disciplined because he hurt his finger when another employee installed the wrong filter in a cart, placing him on Level 1 discipline and probation for three months. Other employees were not disciplined for similar issues.

20. Plaintiff told a manager that the hostile, intolerable work environment was exacerbating his mental health disorders, including depression, anxiety, and military and law enforcement-related post-traumatic stress disorder, and was told the company "can't put up with you for 25 years if this is how it's going to be." Shortly thereafter, the same manager complained about Plaintiff's required military leave with the Montana Air National Guard, while others said its "not their problem" Plaintiff "is in the Guard". Plaintiff was repeatedly harassed about military leave and not taking overtime on drill weekends no one else wanted to work.

21. When Plaintiff again complained about the work environment, with one week left on his questionable probation, his manager called and told Plaintiff to stay home with pay. Plaintiff objected to being disciplined for complaining about the workplace.

22. Through its actions and inactions, Defendant made clear to Plaintiff that his days were numbered. Coupled with the continuing course of conduct and pattern of frequent and similar acts of harassment, intimidation, retaliation, and exacerbation of his mental health conditions, Plaintiff resigned his position on March 1, 2021. Plaintiff was constructively discharged.

## COUNT I
## Disability Discrimination in Violation of the Americans with Disabilities Act
## (42 U.S.C. § 12101, *et seq.*)

23. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

24. While employed by Defendant, Plaintiff was disabled, as defined by the ADA, because he suffers from military and law enforcement post-traumatic stress disorder, depression, anxiety, and other mental health conditions that limit one of more major life activities.

25. Defendant knew of Plaintiff's disability because he told Defendant's managerial and supervisory employees of his conditions.

26. Plaintiff was qualified to perform the essential functions of his job with Defendant.

27. Defendant violated the ADA by intentionally discriminating against Plaintiff based on his disability.

28. Defendant discriminated against Plaintiff by failing to reasonably accommodate his disability. Although Plaintiff requested these accommodations, Defendant did not make them.

29. Plaintiff was subjected to a continuous pattern of discriminatory conduct culminating in his constructive discharge on March 1, 2021.

30. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT II
### Hostile Environment Harassment in Violation of the Americans with Disabilities Act
(**42 U.S.C. § 12101**, *et seq.*)

31. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

32. Plaintiff was subject to verbal or physical conduct based on disability.

33. The conduct was unwelcome.

34. The conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, unreasonably interfere with his work performance, and create an intimidating, hostile, offensive, and abusive work environment.

35. The harassment was perpetrated by Defendant's managerial personnel, and regardless, when Plaintiff followed Defendant's internal complaint process, no meaningful action was taken to promptly remedy the harassment.

36. The continuing course and pattern of conduct became so intolerable that Plaintiff was constructively discharged.

37. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be determined at trial.

### COUNT III
### Retaliation in Violation of the
### Americans with Disabilities Act
### (42 U.S.C. § 12101, *et seq.*)

38. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

39. Plaintiff engaged in protected activity by internally complaining of Defendant's workplace conduct.

40. Plaintiff was subject to adverse employment actions and constructively discharged, which are causally linked to his complaints.

41. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be determined at trial.

### COUNT IV
### Hostile Environment Harassment in Violation of the
### Uniformed Services Employment and Reemployment Rights Act (USERRA)
### (38 U.S.C. § 4301, *et seq.*)

42. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

43. Plaintiff was subject to verbal or physical conduct based on military status.

44. The conduct was unwelcome.

45. The conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, unreasonably interfere with his work performance and create an intimidating, hostile, offensive, and abusive work environment.

46. The harassment was perpetrated by Defendant's managerial personnel, and regardless, when Plaintiff followed Defendant's internal complaint process, no meaningful action was taken to promptly remedy the harassment.

47. The continuing course and pattern of conduct became so intolerable that Plaintiff was constructively discharged.

48. As a direct and proximate result of Defendant's conduct Plaintiff suffered damages in an amount to be determined at trial.

## COUNT V
### Retaliation in Violation of the
### Uniformed Services Employment and Reemployment Rights Act (USERRA)
### (38 U.S.C. § 4301, *et seq.*)

49. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

50. Plaintiff engaged in protected activity by internally complaining of Defendant's workplace conduct.

51. Plaintiff was subject to adverse employment actions and constructively discharged, which are causally linked to his complaints.

52. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT VI
### Hostile Environment Harassment in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. § 2000e, *et seq.*)

53. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

54. Plaintiff was subject to verbal or physical conduct based on sex.

55. The conduct was unwelcome.

56. The conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, unreasonably interfere with his work performance and create an intimidating, hostile, offensive, and abusive work environment.

57. The harassment was perpetrated by Defendant's managerial personnel, and regardless, when Plaintiff followed Defendant's internal complaint process, no meaningful action was taken to promptly remedy the harassment.

58. The continuing course and pattern of conduct became so intolerable that Plaintiff was constructively discharged.

59. As a direct and proximate result of Defendant's conduct Plaintiff suffered damages in an amount to be determined at trial.

### COUNT VII
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964
### (42 U.S.C. § 2000e, *et seq.*)

60. Plaintiff incorporates and realleges all previous paragraphs as if fully set forth herein.

61. Plaintiff engaged in protected activity by internally complaining of Defendant's workplace conduct.

62. Plaintiff was subject to adverse employment actions and constructively discharged, which are causally linked to his complaints.

63. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant:

1. For all damages recoverable under applicable federal law, including without limitation, back pay, front pay, emotional distress, mental anguish, lost benefits, punitive damages, liquidated damages, and attorney's fees and costs;

2. For costs of suit incurred; and

3. For such other relief as the Court deems just and proper.

DATED this 23rd day of November, 2022.

                CONNER, MARR & PINSKI, PLLP

                BY:  */s/ Gregory G. Pinski*
                     Gregory G. Pinski
                     P. O. Box 3028
                     Great Falls, MT 59403-3028
                     *Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

DATED this 23rd day of November, 2022.

                CONNER, MARR & PINSKI, PLLP

                BY:  */s/ Gregory G. Pinski*
                     Gregory G. Pinski
                     P. O. Box 3028
                     Great Falls, MT 59403-3028
                     *Attorneys for Plaintiff*